**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL ZARABI, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GOLAR LNG LIMITED, IAIN ROSS, and EDUARDO NAVARRO ANTONELLO,<br><br>　　　　　　　　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Daniel Zarabi ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Golar LNG Limited ("Golar" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Golar; and (c) review of other publicly available information concerning Golar.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Golar securities between April 30, 2020 and September 24, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Golar provides infrastructure for the liquefaction, transportation, regasification and downstream distribution of LNG. Hygo Energy Transition Ltd. f/k/a Golar Power Limited ("Hygo") is a joint venture between Golar and investment vehicles affiliated with Stonepeak Infrastructure Partners. Hygo was formed to develop, own and operate integrated LNG-based transportation, downstream solutions and associated terminal and power generation infrastructure.

3.      On September 24, 2020, media reported that Hygo's CEO Eduardo Navarro Antonello was involved in a bribery network investigated in Brazil's Operation Car Wash.

4.      On this news, the Company's share price fell $3.28, or 32%, to close at $6.86 per share on September 24, 2020, thereby damaging investors.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that certain employees, including Hygo's CEO, had bribed third parties, thereby violating anti-bribery policies; (2) that, as a result, the Company was likely to face regulatory scrutiny and possible penalties; (3) that, as a result of the foregoing reputational harm, Hygo's valuation ahead of its IPO would be significantly impaired; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Daniel Zarabi, as set forth in the accompanying certification, incorporated by reference herein, purchased Golar securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Golar is incorporated under the laws of Bermuda with its principal executive offices located in Bermuda. Golar's common stock trades on the NASDAQ exchange under the symbol "GLNG."

13.     Defendant Iain Ross ("Ross") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Eduardo Navarro Antonello ("Antonello") was the CEO of Hygo at all relevant times.

15.     Defendants Ross and Antonello (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the

positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Golar provides infrastructure for the liquefaction, transportation, regasification and downstream distribution of LNG.   Hygo Energy Transition Ltd. f/k/a Golar Power Limited ("Hygo") is a joint venture between Golar and investment vehicles affiliated with Stonepeak Infrastructure Partners. Hygo was formed to develop, own and operate integrated LNG-based transportation, downstream solutions and associated terminal and power generation infrastructure.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on April 30, 2020. On that day, Golar filed its annual report on Form 20-F with the SEC for the period ended December 31, 2019 (the "2019 20-F"). Therein, the Company stated, regarding its disclosure controls and procedures:

> We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

> Under the supervision of our Company's Chief Executive Officer and Chief Financial Officer, we carried out an evaluation of the effectiveness of our disclosure controls and procedures, pursuant to Rule 13a-15(e) of the Exchange Act of 1934, as of December 31, 2019. At the time our Annual Report on Form 20-F for the year ended December 31, 2019 was filed on April 30, 2020, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of December 31, 2019.

18.     The 2019 20-F also stated: "We have adopted a Corporate Code of Business Ethics and Conduct that applies to all our employees. A copy of our Corporate Code of Business Ethics

and Conduct may be found on our website www.golarlng.com." The Corporate Code of Business

Ethics and Conduct stated, in relevant part:

> A bribe is defined as an inducement or reward offered, promised or provided in order to influence a person to act improperly. The Company is committed to instilling a strong anti-corruption culture and to uphold all laws relevant to countering bribery and corruption. This includes, but is not limited to, the UK Bribery Act 2010 ("Bribery Act") and the US Foreign and Corrupt Practices Act ("F CPA") which are generally considered to be the strictest legal regimes against bribery. The Company's management are committed to taking a zero-tolerance approach to bribery and corruption, so you should seek support if you feel that you are being pressured to breach the Policy to achieve other Company objectives.
>
> ***The Company expressly prohibits the offering, the giving, the solicitation or the acceptance of any bribe, whether cash or other inducement. This applies to bribes to or from any person or Company, regardless of their geographical location and irrespective of whether they are a public official, public body or private person or private Company, by any individual employee or third party.*** Bribery by an employee or third party in order to gain any commercial, contractual or regulatory advantage for the Company potentially exposes the Company itself to criminal prosecution, as well as the individuals involved.

19.    On May 20, 2020, Golar issued a press release announcing the release of its

sustainability report and its commitment to setting longer-term ESG targets in 2021. Therein, the

Company stated, in relevant part:

> In order to enhance Golar LNG's sustainability disclosures and to permit the development of ESG targets, Golar today publishes its Sustainability Report on its website. After consulting with investors and internal focus groups to develop the right KPIs, Golar has identified five priority focus areas and reported key facts and figures about our 2019 ESG performance across each one:
>
> *        *        *
>
> - **Governance & Ethics**: Golar is committed to principles of transparency, human rights, anti-bribery, and anti-corruption. To supplement the oversight efforts of the Management Team and the Board of Directors, we have established a dedicated Safety, Environment and Ethics Committee to oversee our ESG performance, reporting, and key initiatives.
>
> For each of our five priority ESG focus areas, Golar is also undertaking an exercise to set appropriate long-term ESG reporting targets by 2021 in consultation with our shareholders, charterers, and other key stakeholders. Setting these comparable targets will further aid Golar in fulfilling our commitment to be at the forefront of

delivering LNG as an alternative to more emission-intensive fossil fuels while meeting global energy demand.

20.    On August 31, 2020, the Company announced that its joint venture, Hygo Energy Transition Ltd. would complete an initial public offering ("IPO"). Specifically, in a press release entitled "Hygo Energy Transition Ltd. Files Registration Statement for Initial Public Offering," Golar stated, in relevant part:

> Golar LNG Limited ("Golar LNG") announced today that Hygo Energy Transition Ltd. ("Hygo"), formerly known as Golar Power Limited, a joint venture between Golar LNG and investment vehicles affiliated with Stonepeak Infrastructure Partners, has filed a Registration Statement on Form F-1 with the U.S. Securities and Exchange Commission ("SEC") related to a proposed initial public offering of Hygo's common shares. Hygo intends to apply to list the common shares on the Nasdaq Global Select Market under the ticker symbol "HYGO."

> Hygo was formed to develop, own and operate integrated LNG-based transportation, downstream solutions and associated terminal and power generation infrastructure. Hygo provides these integrated downstream LNG solutions to underserved markets by delivering low cost, environmentally sound energy alternatives to consumers around the world.

21.    On September 17, 2020, Golar announced the launch of Hygo's IPO. In a press release, the Company stated, in relevant part:

> Golar LNG Limited ("Golar") announces today that Hygo Energy Transition Ltd. (NASDAQ: HYGO) ("Hygo"), a joint venture with Stonepeak Infrastructure Partners, has launched an initial public offering of 23,100,000 common shares ("common shares") at an anticipated initial offering price between $18.00 and $21.00 per share pursuant to a registration statement on Form F-1 previously filed with the Securities and Exchange Commission (the "SEC"). In addition, Hygo intends to grant the underwriters a 30-day option to purchase up to an additional 3,465,000 common shares. Hygo has applied to list the common shares on the Nasdaq Global Select Marketplace under the ticker symbol "HYGO." Following the consummation of the initial public offering, Golar is expected to own 50,000,000 common shares in Hygo.

22.    The above statements identified in ¶¶ 17-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that certain employees,

including Hygo's CEO, had bribed third parties, thereby violating anti-bribery policies; (2) that, as a result, the Company was likely to face regulatory scrutiny and possible penalties; (3) that, as a result of the foregoing reputational harm, Hygo's valuation ahead of its IPO would be significantly impaired; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

23.     On September 24, 2020, media reported that Hygo's CEO Eduardo Navarro Antonello was involved in a bribery network investigated in Brazil's Operation Car Wash. According to reports, Sapura Energy paid $40 million in bribes for a $2.7 billion contract with Petrobras and hired lobbyist Mauricio Carvalho to get inside information and help formulate a winning proposal. Carvalho then allegedly passed the information to defendant Antonello.

24.     The same day, Golar announced that Hygo had initiated a review of the allegations against defendant Antonello. In a press release, the Company stated, in relevant part:

> The Company is aware of the allegations that have been made against Hygo's Chief Executive, Eduardo Antonello.  The allegations against Mr. Antonello involve conduct that predates and do not, in any way, implicate his work at Hygo.  However, in an abundance of caution, Hygo has initiated a review to seek to confirm that there have not been any deviations from its culture of compliance in connection with Mr. Antonello's service to Hygo.

25.     On this news, the Company's share price fell $3.28, or 32%, to close at $6.86 per share on September 24, 2020, thereby damaging investors.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Golar securities between April 30, 2020 and September 24, 2020, inclusive,

and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Golar's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Golar shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Golar or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Golar; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

31.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<u>**UNDISCLOSED ADVERSE FACTS**</u>

32.      The market for Golar's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Golar's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Golar's securities relying upon the integrity of the market price of the Company's securities and market information relating to Golar, and have been damaged thereby.

33.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Golar's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Golar's business, operations, and prospects as alleged herein.

34.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Golar's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36.     During the Class Period, Plaintiff and the Class purchased Golar's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Golar, their control over, and/or receipt and/or modification of Golar's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Golar, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

38.    The market for Golar's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Golar's securities traded at artificially inflated prices during the Class Period. On September 18, 2020, the Company's share price closed at a Class Period high of $13.91 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Golar's securities and market information relating to Golar, and have been damaged thereby.

39.    During the Class Period, the artificial inflation of Golar's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Golar's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Golar and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in

Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40.     At all relevant times, the market for Golar's securities was an efficient market for the following reasons, among others:

(a)     Golar shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Golar filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Golar regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Golar was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for Golar's securities promptly digested current information regarding Golar from all publicly available sources and reflected such information in Golar's share price. Under these circumstances, all purchasers of Golar's securities during the Class Period suffered similar injury through their purchase of Golar's securities at artificially inflated prices and a presumption of reliance applies.

42.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## <u>NO SAFE HARBOR</u>

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Golar who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

44.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Golar's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Golar's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Golar's financial well-being and prospects, as specified herein.

48.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course

of conduct as alleged herein in an effort to assure investors of Golar's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Golar and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Golar's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Golar's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Golar's securities during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Golar was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Golar securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

55.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.     Individual Defendants acted as controlling persons of Golar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.     As set forth above, Golar and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 24, 2020          **GLANCY PRONGAY & MURRAY LLP**

By:   _/s/ Gregory B. Linkh_____
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

_Attorneys for Plaintiff Daniel Zarabi_

**SWORN CERTIFICATION OF PLAINTIFF**

**GOLAR LNG LIMITED SECURITIES LITIGATION**

I, Daniel Zarabi, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
Plaintiff motion on my behalf.

2.      I did not purchase the Golar LNG Limited securities that are the subject of this
action at the direction of plaintiff's counsel or in order to participate in any private
action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify
at deposition and trial, if necessary.

4.      My transactions in Golar LNG Limited securities during the Class Period set forth
in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a
class under this title during the last three years, except for the following:


6.      I will not accept any payment for serving as a representative party, except to
receive my pro rata share of any recovery or as ordered or approved by the court,
including the award to a representative plaintiff of reasonable costs and expenses
(including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.

DocuSigned by:

0AF7C0311B38400...

9/24/2020
_____                 _____
Date                                                      Daniel Zarabi

**Daniel Zarabi's Transactions in Golar LNG Limited (GLNG)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 5/1/2020 | Bought | 100 | $6.3000 |
| 5/6/2020 | Bought | 100 | $5.8600 |
| 5/22/2020 | Bought | 200 | $6.6200 |
| 6/8/2020 | Bought | 200 | $9.0900 |
| 6/8/2020 | Bought | 100 | $9.4600 |
| 9/23/2020 | Bought | 200 | $10.7600 |